MAUTER, ADMX., APPELLANT, *v.* TOLEDO HOSPITAL, INC., APPELLEE.

(No. L-88-327—Decided July 28, 1989.)

*Michael A. Dzienny,* for appellant.
*Jack Zouhary* and *Jean Ann S. Sieler,* for appellee.

ABOOD, J. This is an appeal from a decision of the Lucas County Court of Common Pleas granting defendant-appellee Toledo Hospital, Inc.'s motion for summary judgment. Plaintiff-appellant Marilyn Mauter filed a timely notice of appeal setting forth two assignments of error:

"The trial court erred in granting the Toledo Hospital's motion for summary judgment as the evidence presented clearly indicated that genuine issues of material fact exist as to whether or not Toledo Hospital exercised reasonable care in handling this incident based on the knowledge within its possession.

"The trial court erred in granting appellee's motion for summary judgment as physical harm to its business invitees was foreseeable."

The undisputed facts giving rise to this appeal are as follows. On the afternoon of May 23, 1985, at approximately 4:00 p.m., Scott Knapp, a security officer on duty in the south parking garage at Toledo Hospital, watched Mike Andrews walk down the "2 to 1" ramp, jump over a wall, falling as he landed, and approach the cashier's booth where Knapp was standing. As he approached Knapp, Andrews was saying, "I can't believe I done it but I've done it." When Knapp asked him

what he had done, Andrews replied that he had lost his car and that he was "half fucked-up." Knapp told Andrews to stay where he was and he would assist him and then Andrews reached out and shook Knapp's hand introducing himself as Mike. At that point, however, Knapp was directed from the control center by another security officer, Steven Rohrs, to assist with an unruly patient in the psychiatric unit of the hospital. Knapp radioed the control center that he was with an intoxicated individual who was lost and could not find his car. The supervising security officer, Jonathan Jones, instructed Rohrs to watch Andrews on the camera monitors from the control center while Knapp assisted in the psychiatric unit. Knapp cautioned Andrews not to drive and proceeded to the psychiatric unit. As Knapp left he saw Andrews walk away from the cashier's booth after which Rohrs was unable to locate him on the monitors. At about 4:10 p.m. Rohrs heard what sounded like a car backfiring in the garage. Soon after it was discovered that Andrews had fatally shot Brenda Andrews, his estranged wife, while she was in the parking garage after leaving a nursing seminar that had been conducted by appellee. Andrews was arrested and subsequently convicted of aggravated murder.

On February 27, 1987, appellant, as a representative of the estate of Brenda Andrews and her surviving heirs, filed a complaint for wrongful death alleging that appellee owed a duty of reasonable care to Brenda Andrews, that appellee knew or should have known that there was an intoxicated man wandering through the garage in an unstable condition and that appellee was negligent in failing to immediately remove or secure him or take proper action to secure or warn its business invitees. On April 29, 1987, appellee filed its answer. On May 22, 1987, appellant amended her complaint to add additional party defendants and on September 17, 1987, appellee filed its answer to the amended complaint. Discovery was conducted and on January 20, 1988, appellee filed its motion for summary judgment and memorandum in support asserting that the evidence showed that no like incident had ever occurred in the parking garage, that appellee had no reason to know that Andrews was going to commit murder or any other violent act, that Andrews' encounter with Knapp was friendly, that Andrews showed no violent tendencies, that no weapon was seen, that the violence that occurred could not have been foreseen and that consequently it owed no duty to the decedent. Appellee also argued that Brenda Andrews' murder was not proximately caused by any alleged negligence on its part since the criminal shooting broke the chain of causation as a matter of law. On May 2, 1988, appellant filed its memorandum in opposition to appellee's motion for summary judgment asserting that appellee owed a duty of reasonable care to the decedent as a business invitee. Appellant argued that appellee knew that Andrews was intoxicated and wandering the parking garage but yet did nothing to assist, detain, or remove him and that from this evidence alone reasonable minds could conclude that it was foreseeable that harm could result to other invitees. Appellant argued further that appellee need not have known that Andrews was going to commit murder but that it was sufficient that appellee knew that some harm could result from Andrews, being there in that condition. Appellant asserted that a genuine issue of material fact clearly existed as to whether or not appellee exercised reasonable care when it did not detain, secure, or remove Andrews and whether or not that failure to act constituted negligence which contributed to Brenda Andrews' death.

On May 10, 1988, appellee filed its reply memorandum and on July 12, 1988, appellee filed a supplemental memorandum in support of its motion for summary judgment. On June 1, 1988, appellant filed a supplement to her memorandum in opposition.

On August 8, 1988, the trial court in its opinion and judgment entry found as follows:

"* * * [T]here is no evidence that the hospital should reasonably have known that Andrews had been threatening his wife, that Andrews carried a firearm into the parking garage, or that Andrews intended to hurt the decedent. In its answers to plaintiff's interrogatories, the hospital stated that there had never been a shooting in the parking garage or on the property of the hospital prior to this incident. Thus, the shooting of the decedent was unanticipated, and could not reasonably have been foreseen by the hospital. Therefore, the hospital had no duty to protect the decedent against this unforeseeable danger and its motion for summary judgment is found well-taken."

It is from this decision that appellant has brought this appeal.

This court will discuss appellant's two assignments of error together since both raise the same basic question of what duty was owed by appellee to Brenda Andrews.

In order to maintain an action for damages based on negligence, a business invitee must show that a duty was owed, that the duty was breached and that the breach was the proximate cause of the injury. *Bennison* v. *Stillpass Transit Co.* (1966), 5 Ohio St. 2d 122, 34 O.O. 2d 254, 214 N.E. 2d 213. It is undisputed that the decedent in this case was a business invitee on appellee's premises. The Supreme Court of Ohio addressed the issue of owner/occupier liability to an invitee for the criminal acts of third parties in *Howard* v. *Rogers* (1969), 19 Ohio St.

2d 42, 48 O.O. 2d 52, 249 N.E. 2d 804. In *Howard,* the plaintiff was injured when a fight broke out between others at a dance she was attending, and she brought suit against the occupiers of the building where the dance was held. The status of the plaintiff was determined by the court to be that of a business invitee and upon considering the nature of the duty owed to the plaintiff in such circumstances the *Howard* court held in paragraphs one, two and three of the syllabus:

"An occupier of premises for business purposes may be subject to liability for harm caused to a business invitee by the conduct of third persons that endangers the safety of such invitee, just as such an occupier may be subject to liability for harm caused to such invitee by any dangerous condition of those premises.

"An occupier of premises for business purposes is not an insurer of the safety of his business invitees while they are on those premises.

"*Where an occupier of premises for business purposes does not, and could not in the exercise of ordinary care, know of a danger which causes injury to his business invitee, he is not liable therefor.*" (Emphasis added.)

The *Howard* court found that there was no evidence the defendants knew of the danger or imminency of the fight. *Id.* at 44, 48 O.O. 2d at 54, 249 N.E. 2d at 805. The *Howard* court determined, therefore, that there was no evidence from which reasonable minds could conclude that the defendants knew or in the exercise of ordinary care should have known of the likelihood that a fight would break out. *Id.* at 47-48, 48 O.O. 2d at 56, 249 N.E. 2d at 807. The *Howard* court went on to state that there was no evidence of any such conduct at other dances in or near where this dance was conducted or anything else which would have put the defendants on notice of the possibility of a fight. *Id.*

In *Townsley* v. *Cincinnati Gardens, Inc.* (1974), 39 Ohio App. 2d 5, 68 O.O. 2d 72, 314 N.E. 2d 409, the Hamilton County Court of Appeals applied the holding of *Howard, supra,* to a situation in which a patron of a sports arena was assaulted in a washroom on the premises while attending a performance of the Harlem Globe Trotters. The plaintiff in *Townsley* was approached by a young man demanding money and when the plaintiff said he had none, the young man, along with several others, beat the plaintiff. In *Townsley,* while there was some evidence presented of several occasions in which patrons were assaulted while attending other types of events on the premises, there was no evidence presented of assaults by boys seeking money and subsequently beating another patron. *Id.* at 9, 68 O.O. 2d at 74, 314 N.E. 2d at 411. The *Townsley* court, construing *Howard, supra,* concluded:

"* * * [T]here must appear from the facts and the circumstances of the case presented that the defendant had some prior knowledge or experience of the type of occurrence which occasioned the plaintiff's injuries, as alleged, or that the defendant should reasonably have known of or anticipated the type of danger or acts of third persons which resulted in the injuries sustained by the plaintiff." *Id.* at 7-8, 68 O.O. 2d at 73, 314 N.E. 2d at 411.

In this case there was no evidence presented that appellee knew of Andrews' violent intent or any evidence indicating that appellee's security officers could have possibly discerned Andrews' criminal intentions either by his words or actions. Security Officer Knapp's deposition testimony reveals that the only impression he received from Andrews was that he seemed to be intoxicated. This alone does not compel the conclusion that Andrews posed a threat of imminent, violent harm to appellee's invitees. There was no evidence in the record of any prior incidents on appellee's premises even remotely similar in nature to the shooting of Brenda Andrews. Security Officer Knapp testified in his deposition that he was unaware of any shootings, thefts, rapes or assaults taking place previously in the parking garage. Security Officer Jones testified in his deposition that he was aware of only two prior incidents in the parking garage, one a purse snatching and the other an incident where a man in the stairwell shoved a security officer and ran out the door. While appellant, in support of her memorandum in opposition to appellee's motion for summary judgment, did file the affidavit of E. Wilson Purdy, an expert witness, in which he stated that it was foreseeable that harm would result to employees or visitors of appellee by allowing Andrews to remain in the parking garage in his intoxicated state, this evidence is conclusory, and does not constitute affirmative evidence of knowledge on the part of appellee.

Upon consideration of the foregoing, this court finds that there is no evidence in the record from which reasonable minds could conclude that appellee knew of or in the exercise of ordinary care should have known of or could have reasonably foreseen the danger posed to Brenda Andrews and, therefore, the trial court did not err in finding that appellee had no duty to protect Brenda Andrews from this unforeseeable danger. Accordingly, both of appellant's assignments of error are found not well-taken.

On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., concurs.

94

CONNORS, J., dissents.

CONNORS, J., dissenting. I must respectfully dissent. Keeping in mind that this case comes to us from a summary judgment of the trial court, we must look to Civ. R. 56. After consideration of this rule, I differ with my colleagues as to whether a genuine issue of fact, to be decided by triers of the fact, does in fact exist. I am of the opinion that an issue of fact exists from the record below.

There is no dispute as to status of the decedent. She was a business invitee. There is no dispute that her estranged husband came upon the premises of defendant-appellee and, subsequently, shot and killed her, for which he was convicted and sentenced for aggravated murder.

The issue below and here is: What is (was) the duty of the defendant-appellee to insure the safety of business invitees?

Admittedly, no incident of this nature had happened on these premises before. Does that factor automatically absolve the defendant-appellee? I think not. There is a first time for everything. In reliance on their position, the majority cites the decision of the Ohio Supreme Court in *Howard* v. *Rogers* (1969), 19 Ohio St. 2d 42, 48 O.O. 2d 52, 249 N.E. 2d 804, at paragraph three of the syllabus, as follows:

"Where an occupier of premises for business purposes does not, and could not in the exercise of ordinary care, know of a danger which causes injury to his business invitee, he is not liable therefor."

The question of fact in the case *sub judice* is whether or not the security guards at defendant-appellee's business site (a hospital) had knowledge, in the exercise of ordinary care, of a danger which was likely to cause injury to its business invitees. In *Howard, supra,* the Ohio Supreme Court held that the owner of the premises did not, and could not, in the exercise of ordinary care, know of a danger which would cause injury to his business invitee. The facts in the *Howard* case are easily distinguishable from the facts in the case *sub judice.*

In this case the security guard was well aware of the condition of the assailant. The guard had watched the assailant jump over a wall from the second floor to the ground, falling as he landed. The assailant, Andrews, approached Knapp, the security guard and said, "I can't believe I done it but I've done it." When Knapp asked him what he had done, Andrews replied that he had lost his car (in the parking garage) and that he was "half fucked-up." Knapp, the security guard, told Andrews "to stay where you are and I will assist you." Next, a crucial event happened. Knowing he had a person with a problem whom he had promised to assist, the security officer left that person, under directions from the control tower from a security supervisor, and proceeded to the psychiatric ward to help other officers control an unruly patient. Knapp knew and advised his superiors that he was with an intoxicated person (Andrews). The supervising officer ordered another officer to watch Andrews on the monitor and Knapp left the intoxicated person and went to the psychiatric ward, leaving Andrews in the "custody" of the monitor. Sometime later, Andrews came upon his estranged wife, and shot and killed her.

Admittedly, no such incident had occurred on these premises. Yet, in view of the actions of Andrews, his condition, his conduct by way of action and words, the fact that he was under control of the security officer (and in all probability could not have committed the act he did), and then subsequently was left "on his own," when he committed the act he did, leads me to the conclusion that in fact the

defendant-appellee owed a duty of reasonable care, not only to the decedent, but to anyone else in the parking garage, knowing that some harm to someone could result from Andrews being in the condition he was.

The *Howard* court determined, under the facts of that case, that there was no evidence from which reasonable minds could conclude that the defendants knew or in the exercise of ordinary care should have known of the likelihood that a fight would break out. From an examination of the facts in the case *sub judice,* I am of the opinion that sufficient facts were presented to the trial court, and to this court, upon review of the record, that clearly distinguish *Howard, supra,* and that summary judgment was improvidently granted to defendant-appellee. Reasonable minds could differ as to whether or not, based upon the facts in this case, the servants of the defendant-appellee, in the exercise of reasonable care, could have anticipated that Andrews, in his condition, was in such a state to cause injury of some sort, not necessarily murder, to someone, and should have taken steps to prevent that eventuality.

For the above-stated reason, I respectfully dissent, and would reverse the granting of summary judgment, and remand the case to the trial court for further proceedings.