MAIER, Admr., Appellant,

v.

**SERV–ALL MAINTENANCE, INC. et al., Appellees.**

[Cite as *Maier v. Serv–All Maintenance, Inc.* (1997), 124 Ohio App.3d 215.]

Court of Appeals of·Ohio,
Eighth District, Cuyahoga County.

Nos. 71744 and 72140.

Decided Nov. 24, 1997.

216

---

*Cleary & Delay Co.* and *Timothy R. Cleary,* for appellant.

*Porter, Wright, Morris & Arthur, David C. Tryon* and *Robert D. Anderle,* for appellee Burns International Security Services, Inc.

*Alan B. Glassman,* for appellee Allied Security.

*Reminger & Reminger* and *Randy D. Rinicella,* for appellee Progressive Casualty Insurance Company.

DYKE, Judge.

Appellant, Thomas R. Maier, individually and as administrator of the estate of Theresa A. Maier, and as surviving spouse, appeals summary judgments granted in favor of appellees, Allied Security, Inc., Burns International Security Services, Inc., and Progressive Casualty Insurance Company.[1]  For the following reasons, we affirm.

Appellant's decedent, Theresa Maier, worked for Porter Properties E.P.I. Porter's office was located on the fourth floor of the Enterprise Place building in Beachwood, Ohio. Porter owned the Enterprise building, and leased office space to Progressive and other tenants.  Porter hired Serv–All Maintenance, Inc. to clean the building.

On June 22, 1994, between 7:25 and 7:45 p.m., Theresa was attacked on the fourth floor of Enterprise Place by Bobby Hampton, an employee of Serv–All Maintenance.  The attack started in the common hallway and continued in the unlocked offices of Progressive Casualty.  Hampton strangled and killed Theresa. He took $18 from Theresa's purse and left the building.

Upon arrest, Hampton confessed his crime.  He said he had been drinking and smoking crack all day.

*Facts Pertaining to Allied Security*

Porter hired Allied Security to post a guard in the lobby.  The contract between Allied and Porter stated that the contract was solely for the benefit of the client, and no rights were created in favor of third parties.  The written contract did not detail the responsibilities of the security guard, but specific instructions were given in post orders.

According to Paul Dornbos, the Allied guard, the guard was required to be in the lobby ninety-nine percent of the time.  Dornbos was to control access to the building and have employees and visitors sign in.  Dornbos was to escort employees to their cars on request, and was responsible for the security of everyone in the building.  The post orders required that after 7:00 p.m., Dornbos make rounds on all the floors, but he was not required to do this at a particular time.  There was a memo from Allied to its guards, stating that rounds must be made once an hour.  Joseph Scholleart of Allied deposed that this meant rounds of the lobby, perimeter doors and exterior of the building, not the floors.

Starting in 1992, Progressive experienced a series of thefts of portable computers at Enterprise Place.  Numerous petty thefts also occurred.  All the parties

---

1.  Defendant Serv–All Maintenance, Inc. settled with plaintiff and was dismissed from this action.

were aware of the computer thefts. In March 1993, Progressive hired Burns Security to walk through the Progressive offices once each evening.

No assaults had taken place in the building. In a letter dated January 1994, Dornbos stated that the computer thefts might result in a violent confrontation. Dornbos gave the letter to his supervisor, who showed it to Progressive.

On the night of the murder, Dornbos was in the reception area of the lobby. Theresa told him not to sit there, but to sit in the armchair in the lobby. Dornbos remained in the lobby, until a little after 7:30 p.m. At that time, the Burns security guard, Thomas Bennett, came downstairs to get him. Dornbos and Bennett discovered the body of Theresa Maier at 8:05 p.m.

Dornbos did not know that Hampton was intoxicated that day. On one occasion Dornbos had seen Hampton intoxicated at work. Deborah Bell, an employee of Serv–All Maintenance, deposed that she knew Hampton was intoxicated that day by his smell and his behavior. Other employees of Serv–All did not know Hampton was intoxicated.

*Facts Pertaining to Progressive Insurance*

Claudia Novotney, security analyst for Progressive, was aware that at a Progressive office in California, two female employees were killed by a male janitor, sometime in the 1980s. Novotney also deposed that a surveillance camera was set up in an office on the fourth floor in an attempt to catch the computer thief.

A meeting was held in April 1994 to discuss the theft problem. Theresa Maier, Novotney, other individuals from Progressive, and individuals from Allied Security were present. At the meeting, Progressive's policy of leaving the doors unlocked was discussed. It was announced that Burns was patrolling the Progressive offices.

Milan Zuzek, Progressive's facility supervisor, stated that Theresa often walked through the tenant's space to see whether the tenants needed anything. Under the lease, Maier had the right to enter the tenant's premises.

The lease between Progressive and Porter says that the lessee, not the lessor, will not be responsible for death caused by the use or occupancy of the premises. Also, the lessee is responsible for any damage caused by the lessee's failure to lock doors.

*Facts Pertaining to Burns Security*

Gil Ratcliff, manager of Burns Security, deposed that Burns was hired to protect Progressive's property and employees, and did not assume any responsibility to third parties. The security service agreement between Burns and Progressive stated:

"Notwithstanding anything herein to the contrary, the services provided under this Agreement shall not give rise to, nor shall be deemed to or construed as to confer any rights on any other party as a third party beneficiary or otherwise and Client agrees to indemnify Burns against any claims by any third parties."

The contract also stated that it would continue in effect until either party gave notice.

Milan Zuzek deposed that Burns was to provide security for visitors as well as employees. Thomas Bennett, the Burns security guard, stated he escorted employees and business visitors to their cars.

Bennett deposed that he was instructed to arrive sometime after 7:00 p.m. He was not told to be in a particular area of the building at a particular time.

Bennett stated that on the night of the murder, he signed in at Enterprise Place at 7:24 p.m. At 7:30, Bennett went to the fourth floor. He noticed some debris in the common hallway outside the Progressive offices, indicating that a fight had taken place. Bennett went downstairs to get Paul Dornbos, and the two later discovered Theresa's body.

Bennett never saw Hampton that night. Bennett never saw Hampton under the influence.

The report of appellant's expert, Thomas Seals, stated that Burns negligently provided security services. Burns did not adequately train the guards, did not provide adequate equipment, gave vague instructions to guards, and had no security plan. The negligently provided security services may have exacerbated the problem by creating a false sense of security. Seals noted that Progressive's unlocked doors created a potential for crime. The fact that computer thefts were occurring should have alerted Burns to the possibility that a violent confrontation might occur.

I

Appellant's first assignment of error states:

"The trial court erred in granted [sic] the motion for summary judgment by defendant allied security services."

Summary judgment is proper if "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

The moving party must identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. If the moving party meets this burden, the nonmoving party must then produce evidence showing there are genuine issues of material fact as to each material element of his claim. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.

The essential elements of negligence are a duty, breach of duty and injury resulting proximately therefrom. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. Allied presented evidence showing that Allied had no duty to appellant. Appellant then had the burden to show that Allied had a duty.

"Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection." *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173, 543 N.E.2d 769, 772.

Whether a security company owes a duty to a person injured by criminal activity on the premises depends on the terms of the security company's contract with the premises owner. *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 521 N.E.2d 780; *Eagle v. Mathews–Click–Bauman, Inc.* (1995), 104 Ohio App.3d 792, 663 N.E.2d 399.

In this case, there was some evidence showing that the Allied Security guard had the contractual duty to protect both persons and property at Enterprise Place. Cf. *Hill v. Sonitrol, supra.* There was evidence that the guard was required to patrol the floors. Allied did not breach this duty to patrol the floors, as no particular time was specified for the patrols. There was evidence that the security guard was required to restrict access to persons entering the building. Appellant argues that Allied had the duty to observe Hampton when he signed in, discover his intoxicated condition, and eject him from the building.

Even if a special relationship exists requiring a security company to provide protection for an individual, the security company is liable only if the criminal actions of the third party were foreseeable. *Hill v. Sonitrol; Fed. Steel & Wire, supra.* The test for foreseeability is "[w]hether a reasonably prudent person would have anticipated that an injury was *likely* to result from the performance or nonperformance of an act." (Emphasis added.) *Fed. Steel, supra,* at 174, 543 N.E.2d at 773. No one is bound to prevent consequences which are beyond the range of *probability. Feichtner v. Cleveland* (1994), 95 Ohio App.3d 388, 396, 642 N.E.2d 657, 662–663.

"[F]oreseeability of criminal acts will depend on the *knowledge* of the defendant-business, which must be determined from the totality of the circumstances. Only when the totality of the circumstances are 'somewhat overwhelming' will a defendant-business be held liable for the criminal acts of a third party." (Citation omitted; emphasis *sic*.) *Id.* at 396, 642 N.E.2d at 662, citing *Reitz v. May Co. Dept. Stores* (1990), 66 Ohio App.3d 188, 583 N.E.2d 1071.

■ Appellant asserts that the murder of Theresa Maier was foreseeable because of the computer thefts, Dornbos's memo stating that it was possible that a theft could result in a violent confrontation, and the fact that Hampton was intoxicated at work. The computer thefts and Dornbos's memo show only that an assault was possible, not probable or likely. Computer thefts and petty thefts are nonviolent crimes which do not render a murder foreseeable. See *Reitz, supra*; *Hickman v. Warehouse Beer Sys., Inc.* (1993), 86 Ohio App.3d 271, 620 N.E.2d 949. The sole fact that a person is intoxicated does not make it foreseeable that the person will become violent. *Mauter v. Toledo Hosp., Inc.* (1989), 59 Ohio App.3d 90, 571 N.E.2d 470, *Daniels v. Thistledown Racing Club, Inc.* (1995), 103 Ohio App.3d 281, 659 N.E.2d 346; *Rescigno v. Heyduk* (Aug. 15, 1996), Cuyahoga App. No. 69172, unreported, 1996 WL 465374.

The totality of the circumstances was not "somewhat overwhelming." No assaults had ever taken place in the building, and the building was not located in a high-crime area. A reasonable mind could not conclude that the murder and robbery of Theresa Maier were reasonably foreseeable. Allied Security had no duty to protect against the unforeseeable actions of a third party.

■ Appellant's argument based on Section 324A of the Restatement of the Law 2d, Torts (1965) 142, also fails. See *Sonitrol, supra*, 36 Ohio St.3d at 42, 521 N.E.2d at 786. A person is not required to exercise care to prevent an unforeseeable consequence. *Feichtner, supra.*

The trial court properly granted summary judgment in favor of Allied Security.

Accordingly, this assignment of error is overruled.

## II

Appellant's second assignment of error states:

"The trial court erred in denying appellant's motion to exclude certain evidence in support of, and in the granting of a motion for summary judgment by Burns International Security Services, Inc."

Appellant moved to strike the affidavits of Ratcliff, Bennett and Novotney, claiming they were inconsistent with deposition testimony, irrelevant, and made without personal knowledge. See *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d

679, 689, 591 N.E.2d 762, 768–769. We find that the affidavits and depositions were consistent. The affidavits were relevant and made with personal knowledge.

Appellant also moved to strike the Security Services Agreement between Burns and Progressive as irrelevant. According to appellant, the agreement applied to other Progressive offices, not Enterprise Place. The depositions and affidavits clearly show that the contract was a blanket agreement, and Progressive and Burns agreed later to add services at Enterprise Place. The security agreement was relevant. The trial court did not err in denying appellant's motion to strike Burns's evidence.

Appellant asserts that Burns had a special relationship with Theresa Maier, requiring Burns to protect her. See *Fed. Steel & Wire, supra.* Appellant argues that although the security agreement between Burns and Progressive states that third parties are not intended to benefit, the agreement does not define "third party." Bennett's deposition establishes that Burns was to protect people in the Progressive offices, as well as property. Bennett stated that he escorted visitors to their cars, although he was not required to do so. Zuzek, Progressive's facility supervisor, deposed that Burns was to provide security to visitors, as well as employees.

Even if a special relationship existed, Burns is not liable if the criminal acts of the third party were not foreseeable. See *Hill, Fed. Steel & Wire, and Feichtner, supra.* As discussed above, the murder in this case was not foreseeable, based on the totality of circumstances. Burns did not owe a duty of care to protect appellant's decedent from the unforeseeable acts of a third party.

Additionally, there is no evidence showing that Burns breached a duty that proximately caused the injury. Burns's duty is limited to what was required of Burns under the contract between Burns and Progressive. See *Hill, supra.* Bennett was not required to patrol the Progressive offices at any particular time. On the date of the murder, Bennett conducted his patrol as required. Appellant's expert states that Burns did not properly train its guards and did not supply adequate equipment, but does not state how these failures caused the decedent's death.

The trial court properly granted summary judgment in favor of Burns International Security, Inc.

Accordingly, this assignment of error is overruled.

### III

Appellant's third assignment of error states:

"The trial court erred in denying appellant's motion to exclude certain evidence in support of, and in the granting of, a motion for summary judgment by Progressive Insurance Company."

Appellant moved to exclude the lease between Progressive and Porter, but the lease was properly authenticated in a supplemental affidavit. The trial court properly denied appellant's motion to strike.

Appellant asserts that Progressive had a special duty to the victim based on Progressive's lease with Porter. The lease states that Progressive shall indemnify Porter for losses to third parties occurring on the leased premises, due to use or occupancy of the premises. The sole intent of this language is that Progressive shall hold Porter harmless. There is no indication that the contract was entered into directly or primarily for the benefit of third persons. See *Hill v. Sonitrol, supra,* 36 Ohio St.3d at 42, 521 N.E.2d at 786; *Amborski v. Toledo* (1990), 67 Ohio App.3d 47, 52, 585 N.E.2d 974, 977.

Appellant asserts that Theresa Maier was a business invitee of Progressive Insurance, so Progressive owed Maier a duty of ordinary care. Progressive asserts that there was no evidence that Maier was in the Progressive offices on the evening of the murder for the benefit of Progressive, so Maier was a licensee. See *Provencher v. Ohio Dept. of Transp.* (1990), 49 Ohio St.3d 265, 551 N.E.2d 1257.

For the sake of argument, we will assume that Maier was an invitee. An occupier of premises is not liable to a business invitee for a danger which was unknown to the occupier and could not be discovered in the exercise of ordinary care. *Mauter v. Toledo Hosp., Inc.* (1989), 59 Ohio App.3d 90, 571 N.E.2d 470; *Howard v. Rogers* (1969), 19 Ohio St.2d 42, 48 O.O.2d 52, 249 N.E.2d 804. In other words, the premises owner owes no duty for the unforeseeable crimes of third parties. *Id.*

Progressive was aware of the computer thefts and aware that a computer had been placed near a surveillance camera, as bait for the thief. Progressive was also aware that it left its doors unlocked, giving access to a thief. Progressive was shown the Dornbos letter, which stated that an assault could *possibly* arise in the course of a computer theft. Progressive officials knew of a double murder in a Progressive office building in California in the 1980s. The California murders were too remote in location and time to render a murder foreseeable at Enterprise Place. Under the totality of the circumstances, a computer theft was foreseeable, but an assault and murder were not. To show foreseeability, one must demonstrate that the specific harm at issue was foreseeable. *Reitz, supra.*

Progressive did not owe a duty to prevent the unforeseeable criminal acts committed by Hampton. The trial court did not err in granting Progressive's motion for summary judgment.

The decision of the trial court is affirmed.

*Judgment affirmed.*

BLACKMON, P.J., and PATTON, J., concur.