OPINION
{¶ 1} Plaintiff-appellant Elle J. Pass appeals from the July 9, 2003, Judgment Entry of the Stark County Court of Common Pleas which granted summary judgment in favor of defendants-appellees Cinemark USA, Inc. and Cinemark Tinseltown USA [hereinafter appellees].
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 10, 2002, plaintiff-appellant Elle J. Pass filed a complaint in the Stark County Court of Common Pleas in which she alleged that defendantsappellees Cinemark USA, Inc. and Cinemark Tinseltown USA were negligent in maintaining a movie theatre on October 13, 2000. After discovery, appellees filed a motion for summary judgment on June 4, 2003.
 {¶ 3} The following facts were asserted. On October 13, 2000, appellant was a patron in theatre number 15 of the Tinseltown USA multi-screen movie complex located in North Canton, Ohio. Appellant, a 76 year old widow at the time of the accident, went to see a movie with her sisters, Irene George and Sally Koutousouis. Appellant and her sister, Irene George, had frequented the theatre "quite a few times" prior to the October 13, 2000, accident date. Appellant and Ms. George testified at their depositions that appellant and Ms. George went to the movies at least once a week and they went to either the Tinseltown complex or the Movies 10 complex.[1]
 {¶ 4} Upon arrival at the Tinseltown Movie Complex on October 13, 2000, the group moved to their normal movie seats. These seats were in the portion of the theatre that offered stadium-type seating. The group chose not to sit in the ground-level seating which was offered. Appellant testified at her deposition that she preferred to sit in the stadium-type seating. To reach the seats, appellant and her sisters walked up the aisle and stairs to the seats.
 {¶ 5} During the showing of the movie, appellant left her seat, and by herself, proceeded back down the aisle and stairs to utilize the theatre's ladies' rest room. Appellant had no problems going down the aisle and stairway and did not fall. After using the restroom, appellant once again took the aisle and stairs back to her seat and watched the rest of the film. Appellant testified that she used the handrail as she went to her seat because she always held the handrail.
 {¶ 6} At the end of the movie, appellant and her sisters waited while most of the patrons left. Then, apparently while the credits were still being shown, appellant and her sisters stood to exit the theatre. The group proceeded down the stairs with appellant in the lead. As appellant made her way down the steps to a landing, appellant misjudged her footing. When appellant had reached the last or next to the last step before the landing, she believed she was stepping onto the landing. At that point, appellant fell and broke her hip. Appellant testified that her foot did not catch on anything, she did not slip on debris and she did not twist her ankle. Appellant's explanation, given at her deposition, was that she misjudged. At her deposition appellant was asked "where was your hand at the time you fell?". Appellant testified that she "was holding onto the railing here and then I let go, because there was no more railing here." Appellant then stated that "I let go, because I thought I was on that floor." Upon being asked "because you thought you were already on the landing?" appellant responded that she voluntarily let go of the railing.
 {¶ 7} In an affidavit filed in response to appellees' motion for summary judgment, appellant attempted to clarify or add to her deposition testimony. In the affidavit, appellant stated that the sconce lights in the theatre did not come on at the end of the movie. Appellant also asserted that because the handrail ended before the landing, appellant believed she was stepping onto the landing at the bottom of the stairs, rather than a step. Appellant concluded that because the sconce lights had not come up after the movie ended, she was not able to discern that there was another step between where the handrail ended and where the landing began.
 {¶ 8} On July 9, 2003, the trial court granted appellees' motion for summary judgment. Thus, it is from the July 9, 2003, Judgment Entry that appellant appeals raising the following assignment of error:
 {¶ 9} "The trial court erred, to the prejudice of the Plaintiff-Appellant, in granting Defendants-Appellees' motion for Summary Judgment in that, construing all evidence in a light most favorable to the plaintiff-appellant, genuine issues of material fact do exists."
 {¶ 10} In the sole assignment of error, appellant contends that the trial court erred when it granted summary judgment in favor of appellee. We disagree.
 {¶ 11} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ. R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 12} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. Vahila v. Hall, 77 Ohio St.3d 421, 429,1997-Ohio-259, 674 N.E.2d 1164 (citing Dresher v. Burt (1996),75 Ohio St.3d 280, 662 N.E.2d 264). It is subject to this standard of review that we address appellant's assignment of error.
 {¶ 13} In their motion for summary judgment, appellees contended that summary judgment was appropriate because 1) appellant could not state what caused appellant to fall, 2) any danger was open and obvious and 3) appellant had attended the theatre on many occasions in the past. The trial court granted summary judgment. We agree with the trial court that summary judgment was appropriate.
 {¶ 14} It is undisputed that appellant was a business invitee of appellees. "[A] business invitee must show that a duty was owed, that the duty was breached and that the breach was the proximate cause of the injury." Mauter v. Toledo Hosp., Inc.
(1989), 59 Ohio App.3d 90, 92, 571 N.E.2d 470. Appellee, "although not an insurer of the customer's safety owes business invitees a duty of ordinary care to maintain the premises in a reasonably safe condition for their protection." Centers v.Leisure Internatl., Inc. (1995), 105 Ohio App.3d 582, 584,664 N.E.2d 969 (citing Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203, 480 N.E.2d 474).
 {¶ 15} However, appellees are under no duty "to protect business invitees from dangers known to the invitee, or those so obvious and apparent that the invitee may reasonably be expected to discover them and protect himself from them." Id. The rationale behind this open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning. Thus, owners or occupiers such as appellees may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves. Simmers v.Bentley Constr. Co. (1992), 64 Ohio St.3d 642, 1992 Ohio 42,597 N.E.2d 504.
 {¶ 16} In this case, appellant was a frequent patron at the Tinseltown theatre. Appellant, as she had done numerous times, elected to sit in the stadium-type seating, rather than the floor level seating. Accordingly, appellant had been in the theatre many times and used the handrail and stairs many times. Prior to the fall, on October 13, 2000, appellant had taken the aisle and stairs to her seat. Then, during the movie, she proceeded down the aisle and stairs and then back up the aisle and stairs to her seat. At the end of the movie, appellant elected to leave her seat, go down the stairs and exit the theatre while the credits were showing and before the houselights were scheduled to come to full lighting level. Thus, appellant was aware of the darkness of the theatre. Even if the lights failed to rise to the proper level during the credits, appellant was aware of the darkness and chose to exit her seat.
 {¶ 17} Upon review, we find that any hazard or danger was open and obvious. We conclude that summary judgment was appropriate.
 {¶ 18} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Farmer, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Movies 10 is another movie complex in the area and is not a party to this action.