OPINION
{¶ 1} Plaintiff-appellant Lisa Rickels appeals from the September 8, 2005, Judgment Entry of the Licking County Court of Common Pleas which granted defendants-appellees' motions for summary judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 30, 2003, plaintiff-appellant Lisa Rickels filed a civil complaint against Captain Woody's Pub Grub, 1055 Avondale Inc. dba Captain Woody's Pub, Joe Marasco and Walter Hostasa. The complaint was based upon the following factual assertions. On August 30, 2002, appellant was one of several guests on a boat on Buckeye Lake. The boat was owned by Bernard and Deborah Ratcliff. Appellant and the other occupants of the boat approached the dock of Captain Woody's Pub Grub (a restaurant) to participate in a breakfast party. Defendants-appellees Walter and Debby Hostasa and W.M. Hostasa, are the owners and lessors of the property in which Captain Woody's is located. Appellee 1055 Avondale Inc. dba Captain Woody's Pub [hereinafter Avondale] is the owner of the restaurant and lessee of the property. Appellant was at Captain Woody's for approximately two and one half hours, when at least a portion of the dock shifted and broke. Shortly thereafter, appellant stepped onto the dock, while attempting to assist another person that had fallen off the dock and into the water. When appellant did so, the dock moved and appellant fell. Appellant's wrist was injured in the fall.
 {¶ 3} The complaint was eventually amended to add Debbie Hostasa, W.M. Hostasa Co., Robert Mar, Robert Fusner, Erie Insurance Co. (as insurer of Walter Hostasa and/or Debbie Hostasa and/or W.M. Hostasa Co., covering the Captain Woody's premises) and Nautilus Insurance Co. (as insurer of Avondale and/or Robert Mar and/or Joseph Marasco and/or Robert Fusner, covering the Captain Woody's premises). Further, appellee Avondale filed a third party complaint against Bernard and Deborah Ratcliff.
 {¶ 4} On June 15, 2005, defendants-appellees Walter Hostasa, Debby Hostasa and W.M. Hostasa, Co. filed a motion for summary judgment. Subsequently, on June 24, 2005, defendants-appellees 1055 Avondale, Inc., Robert Mar, Robert Fusner and Joe Morasco filed a motion for summary judgment.
 {¶ 5} On September 8, 2005, the trial court granted summary judgment in favor of Walter Hostasa, Debby Hostasa, and W.M. Hostasa, Co. and 1055 Avondale, Inc., Robert Mar, Robert Fusner, Joseph Marasco and Bernard and Deborah Ratcliff. The trial court based its decision on its finding that appellant's alleged injuries were the "result of her contact with an open and obvious condition as a matter of law." Sept. 8, 2005, Judgment Entry, pg. 4. The trial court noted that in her deposition, appellant acknowledged that she was aware that the crowded dock was unsafe and that she had been on boats and docks in the past and was familiar with them.
 {¶ 6} It is from the September 8, 2005, Judgment Entry that appellant appeals, raising the following assignments of error:
 {¶ 7} "I. THE TRIAL COURT ERRED IN APPLYING INAPPROPRIATE STANDARDS FOR DECIDING THE MOTION FOR SUMMARY JUDGMENT.
 {¶ 8} "II. THE TRIAL COURT ERRED IN FINDING THAT THERE WERE NO GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE CONDITION WHICH CAUSED PLAINTIFF-APPELLANT INJURY WAS OPEN AND OBVIOUS."
 II {¶ 9} This court will address appellant's second assignment of error first since this court finds it to be dispositive of the appeal. In the second assignment of error, appellant argues that the trial court erred when it found there were no genuine issues of material fact as to whether the condition of the dock was open and obvious as a matter of law. We agree.
 {¶ 10} This matter reaches us upon a grant of summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides the following, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 11} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (citing Dresherv. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264).
 {¶ 12} It is based upon this standard that we review appellant's assignment of error.
 {¶ 13} It appears undisputed that appellant was a business invitee at Captain Woody's. "[A] business invitee must show that a duty was owed, that the duty was breached and that the breach was the proximate cause of the injury." Mauter v. Toledo Hosp.,Inc. (1989), 59 Ohio App.3d 90, 92, 571 N.E.2d 470. Although not an insurer of the customer's safety, there is a duty of ordinary care to maintain the premises in a reasonably safe condition for the customer's protection. Centers v. Leisure Internatl., Inc.
(1995), 105 Ohio App.3d 582, 584, 664 N.E.2d 969 (citing Paschalv. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203,480 N.E.2d 474).
 {¶ 14} However, there is no duty "to protect business invitees from dangers known to the invitee, or those so obvious and apparent that the invitee may reasonably be expected to discover them and protect himself from them." Id. The rationale behind this open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning. Thus, owners or occupiers such as appellees may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves. Simmers v.Bentley Constr. Co. (1992), 64 Ohio St.3d 642, 1992-Ohio-42,597 N.E.2d 504.
 {¶ 15} Appellees argue that summary judgment was appropriate based upon certain assertions by appellant at her deposition. In their motion for summary judgment, appellees cited to statements by appellant that she was familiar with boating and Buckeye Lake. In addition, appellant stated that she was familiar with Captain Woody's as she had been there once before, during the summer of 2002, for lunch. As to the safety of the dock, appellees cited to deposition testimony in which appellant admitted that prior to her injury, she and her niece discussed how a portion of the dock looked unsafe. Rickels' Depo. P. 29-30. Based on the foregoing, appellees argued that the condition of the dock was open and obvious. Appellees asserted that appellant knew that the dock was overcrowded and unsafe when she chose to step out onto the dock.
 {¶ 16} Appellant responded to appellees' motion for summary judgment by providing an affidavit in which appellant clearly stated that the dock she stepped out onto appeared to be stable and the dock that was leaning "was quite a distance from the portion of the dock I got on." An affidavit provided from her niece made the same assertions.
 {¶ 17} Upon de novo review and construing the evidence in favor of appellant, we find that appellant's deposition demonstrates that there is a genuine issue of material fact as to whether the condition of the dock was open and obvious.
 {¶ 18} In her deposition, appellant made the following statements:
 {¶ 19} "Q. Were there people on the docks when you arrived?
 {¶ 20} "A. Yes.
 {¶ 21} "Q. Were the docks crowded when you arrived?
 {¶ 22} "A. Yes.
 {¶ 23} "Q. What's your definition of crowded as it relates to when you arrived?
 {¶ 24} "A. I looked at the dock. It looked full of people.
 {¶ 25} "Q. Did it look unsafe?
 {¶ 26} "A. Yes.
 {¶ 27} "Q. This is when you first pulled up, there was enough people —
 {¶ 28} "A. No. It didn't look unsafe when I first pulled up. I hadn't had time to see that or think about that. . . .
 {¶ 29} "Q. About what point in time, thinking back, did you think the docks became so crowded they were unsafe?
 {¶ 30} "A. There was a time I was sitting there with my niece, and she actually pointed it out to me. Since we're upfront here, she pointed to the dock down this way and said, Look at that dock.[1] It was sitting sideways like this and looked unsafe. And then we talked about the weight being on the dock. I don't recall what time that was, but that's when I noticed that that doesn't look very safe.
 {¶ 31} "Q. Was it prior to 9:30 [when appellant was injured]?
 {¶ 32} "A. Yes.
 {¶ 33} "Q. When you looked down there with your niece, were people falling off the dock or —
 {¶ 34} "A. They didn't fall off the dock until the dock broke. . . .
 {¶ 35} "Q. [W]here exactly did the dock break? . . .
 {¶ 36} "A. From what I could see and such, it first broke, not directly in front of the boat I was on, it was more like down here. This all caved in, and then a little — just a couple minutes later when I stepped off the boat onto the dock, then this dock then slid down and broke also. But it first broke right here from what I saw.
 {¶ 37} "Q. So you're saying the dock broke in two places?
 {¶ 38} "A. Well, it first broke here, which there was a complete gap between them. And it broke completely apart. All wood was gone. This right here was still intact in front of theboat. I stepped off right here, and then this whole thing then shifted and broke, fell down further into the lake actually. . . .
 {¶ 39} "Q. Were there — I'm pointing to the portion of the dock that you wrote that broke second. Were there a lot of people on this part of the dock as well?
 {¶ 40} "A. Before the break?
 {¶ 41} "Q. Yes.
 {¶ 42} "A. Yes. After this broke, I don't know if there were still a lot of people there or if they ran or what. I don't know. Because then it happened very quickly.
 {¶ 43} "Cross-Examination
 . . . {¶ 44} "Q. So I have this straight, where the dock initially collapsed, you were on the Ratcliff's boat?
 {¶ 45} "A. Yes.
 {¶ 46} "Q. You stepped off the boat onto what you thought was a solid remaining portion of the dock?
 {¶ 47} "A. Yes." Tr. 23-24, 30-31, 33 and 61. (Emphasis added.)
 {¶ 48} We find that when we apply the applicable standard of review, appellant has demonstrated a genuine issue of material fact as to whether the area of the dock or docks upon which she stepped was an open and obvious danger. We recognize that this was a close call and that neither the appellees or appellant demonstrated what the dock or docks involved looked like or how they were constructed to aid the court. This court could not definitively determine whether the portion of the dock which initially collapsed necessarily had an effect on the portion of the dock upon which appellant stepped. However, this court must construe the evidence in favor of appellant. When we do so, we find that we must reverse the decision of the trial court. Appellant stated in her deposition that the dock did not look unsafe when she first arrived. Further, when she described the portion of the dock that she and her niece thought looked unsafe, she described it as "down this way" as opposed to where she and her niece were "up front." Further, she described the first break of the dock as "not directly in front of the boat I was on, it was more like down here." On cross examination, appellant confirmed that when she stepped off the boat, appellant thought that she was stepping onto a solid remaining portion of the dock.
 {¶ 49} For the foregoing reasons, we find there is a genuine issue of material fact as to whether the condition of the dock was open and obvious. Accordingly, appellant's second assignment of error is sustained.
 I {¶ 50} In the first assignment of error, appellant contends that the trial court erred by applying inappropriate standards for deciding the motion for summary judgment. Specifically, appellant contends that the trial court engaged in a weighing of the evidence to conclude that the condition was open and obvious. In light of our holding in assignment of error II, we find that this assignment of error is moot.
 {¶ 51} The judgment of the Licking County Court of Common Pleas is reversed. This matter is remanded for further proceedings in accordance with this opinion.
Edwards, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion. Costs assessed to appellees.
[1] There was a drawing used during the deposition which was not preserved.