[Cite as *Davis v. Hollins*, 2019-Ohio-385.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Diana Davis, as Administrator of the Estate of Jason Barry et al., | : | |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 17AP-716 |
| v. | | (C.P.C. No. 15CV-10049) |
| | : | |
| Montez D. Hollins et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on February 7, 2019

**On brief:** *Piscitelli Law Firm,* and *Eric W. Henry,* for appellants. **Argued:** *Eric W. Henry.*

**On brief:** *Molly G. Vance,* for appellees. **Argued:** *Molly G. Vance.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiffs-appellants, Diana Davis, as Administrator of the Estate of Jason Barry, Sr., and Kristina Petree ("appellants"), appeal from the decision of the Franklin County Court of Common Pleas granting BAI Consumer Square West, LLC, BAI Consumer Square West Mezz, LLC (together "BAI"), and Zamias Services, Inc.'s ("Zamias") (all collectively the "appellees") motion for summary judgment. For the reasons that follow, we reverse the trial court and remand the action for further proceedings consistent with this decision.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} This case arises from an incident that occurred on November 15, 2013 in the parking lot of the Consumer Square West Shopping Center ("Consumer Square West") at

the intersection of West Broad Street and North Wilson Road in Columbus. In June 2011, BAI acquired the Consumer Square West shopping center. Contemporaneous with its acquisition of the shopping center, ownership entered into a "management agreement" with Zamias. Ed Carr was Zamias's Regional Property Manager in charge of Consumer Square West at the time. Pursuant to its agreement with the owner, Zamias was entirely responsible for management of the shopping center parking lot, including determining whether security services were necessary. Neither the ownership nor management implemented any security measures, or took any action designed to improve the safety of shoppers, from the time they took control through the November 2013 subject incident.

{¶ 3} On the evening of November 15, 2013, Montez Hollins along with two female acquaintances, including Ellen Hill, went to Consumer Square West to purchase cocaine. At approximately the same time, upon exiting the Kroger store, Jason Barry, Sr. and Kristina Petree were involved in a verbal altercation with Hill, whom Barry and Petree felt was driving too fast in the parking lot. In turn, Hill relayed the event of the verbal altercation to Hollins, who was in another vehicle in another part of the same parking lot at the time. Hollins subsequently drove his vehicle to the area where Barry and Petree were loading their groceries and a second verbal altercation ensued. Eventually, Hollins began circling the parking lot at a high rate of speed and struck both Barry and Petree, killing Barry and injuring Petree.

{¶ 4} On November 10, 2015, appellants filed a lawsuit against Hollins, Hill, The Kroger Company, BAI, Zamias, and the Gilbert Group, Inc. Real Estate claiming negligence, negligent and intentional infliction of emotional distress, and wrongful death.[1]

{¶ 5} On June 14, 2017, appellees filed a motion for summary judgment. The trial court granted appellees' motion and found that:

> Upon review, the Court finds that no genuine issues of material fact exist in this matter, and Defendants are entitled to judgment as a matter of law. Accordingly, the motion of Defendants for summary judgment is hereby GRANTED, and Plaintiffs' Complaint is DISMISSED, with prejudice. This is a final appealable order and there is no just cause for delay.

(Empasis sic.) (Sept. 11, 2017 Decision and Entry at 6.)

---

[1]On March 1, 2016, appellants voluntarily dismissed defendant Gilbert Group, Inc. Real Estate from this action. On July 10, 2017, defendants Hollins, Hill, and The Kroger Company were likewise dismissed.

## II. ASSIGNMENT OF ERROR

{¶ 6}   Appellant appeals assigning a single error:

> The Trial Court erred in granting summary judgment for Defendants-Appellees.

## III. DISCUSSION

{¶ 7}   Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 8}   Summary judgment is proper only when the party moving for summary judgment demonstrates that: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 9}   When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). A moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id.* If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving

party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 10} Generally, a premises owner owes a business invitee a duty to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition. *Desir v. Mallett,* 10th Dist. No. 14AP-766, 2015-Ohio-2124, ¶ 23. A duty on the part of a business owner to warn or protect business invitees from the criminal acts of third parties arises only if that business owner knows or should know that there is a substantial risk of harm to its business invitees on the premises in the possession and control of the owner. *Heimberger v. Zeal Hotel Group, Ltd.*, 10th Dist. No. 15AP-99, 2015-Ohio-3845, ¶ 17, citing *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 135 (1995). "If a third party's criminal act is not foreseeable, then no duty arises, and a business owner cannot be held liable in negligence." *Id.*, citing *Shivers v. Univ. of Cincinnati*, 10th Dist. No. 06AP-209, 2006-Ohio-5518, ¶ 6.

{¶ 11} We consider the "totality of circumstances" in analyzing whether a criminal threat was foreseeable. *Heimberger* at ¶ 18. Under the prevailing test, a court may consider the entirety of the record to determine whether the circumstances gave rise to an owner or manager's duty to reasonably warn or protect invitees from a criminal threat. As the court in *Heimberger* explained, "[t]he foreseeability of criminal acts, examined under the test of whether a reasonably prudent person would have anticipated an injury was likely to occur, will depend upon the totality of the circumstances." *Id.* "The totality of the circumstances test considers prior similar incidents, the propensity for criminal activity to occur on or near the location of the business, and the character of the business." *Id.* " 'Because criminal acts are largely unpredictable, the totality of the circumstances must be somewhat overwhelming in order to create a duty.' " *Id.*, quoting *Reitz v. May Co. Dept. Stores*, 66 Ohio App.3d 188, 193-94 (8th Dist.1990).

{¶ 12} In addition, "[t]hree main factors contribute to a court's finding the evidence insufficient to demonstrate the foreseeability of a crime as a matter of law: (1) spatial separation between previous crimes and the crime at issue; (2) difference in degree and form between previous crimes and the crime at issue; and (3) lack of evidence revealing defendant's actual knowledge of violence." *Id.* Our review shows that none of these three factors are present here.

{¶ 13} The first application of the totality of circumstances test in Ohio came from the Eighth District Court of Appeals in *Reitz*. The court's main consideration was determining whether the premise owner had, or should have had, knowledge of the criminal threat on its premises such that it triggered the duty to act. *Id.* at 193.

{¶ 14} In the present case, the trial court found that:

> In the instant matter, applying the "totality of the circumstances" framework as set forth in *Heimberger*, the Court finds that Plaintiffs have not provided any admissible evidence that the specific type of harm that came to the Plaintiffs by way of the specific actions of Mr. Hollins and Ms. Hill were in any way foreseeable by the Defendants. While Plaintiffs have submitted a plethora of evidence of the general crime present in the area, there is *nothing in the record that would indicate that Defendants knew or should have known that the specific acts and harm perpetrated in this case were likely to occur.* Because the actions of Mr. Hollins and Ms. Hill were not foreseeable, as a matter of law no duty to warn or protect the Plaintiffs from the harm that came to them arose. In the absence of such a duty, Plaintiffs' claim for negligence against Defendants likewise fails as a matter of law.

(Emphasis sic and added.) (Decision and Entry at 6.)

{¶ 15} In short, the trial court used an incorrect standard when it applied a "specific acts and harm" requirement, as opposed to similar incidents and general harm, into the totality of circumstances analysis. The "specific harm" requirement arose from the Eighth District case of *Maier v. Serv-All Maintenance, Inc.* 124 Ohio App.3d 215 (8th Dist.1997). In *Maier*, the court concluded its opinion by noting: "Under the totality of the circumstances, a computer theft was foreseeable, but an assault and murder was not. To show foreseeability, one must demonstrate that the specific harm at issue was foreseeable." *Id.* at 224, citing *Reitz*. In *Heimberger,* we cited *Maier*, in what is clearly dicta,[2] for the proposition that "[t]o show foreseeability, one must demonstrate that the specific harm at issue was foreseeable." *Heimberger* at ¶ 25. The requirement that a "specific harm" be foreseen is limited, in premises liability context, to *Maier* and *Heimberger*. In fact, the only other premises liability case suggesting a "foreseeability of specific harm" requirement in

---

[2] Our dicta in *Heimberger* offers no authority for changing our, and the Supreme Court of Ohio's, precedent of requiring similar incidents and general harm, as explained at ¶ 16-18 of this decision.

the law noted such a requirement would conflict with the Restatement of the Law 2d, Torts (1965). *See Wheatley v. Marietta College*, 4th Dist. No. 14CA18, 2016-Ohio-949, ¶ 63, fn 6.

{¶ 16} *Maier* misreads *Reitz,* which is demonstrative in disavowing what the *Maier* court would later conclude is the requirement of a specific harm. The totality of the circumstances test empowered the court to consider the entirety of the specific facts of each case:

> By adopting the "totality of the circumstances" standard, the first victim is not necessarily precluded from establishing foreseeability and the finite distinctions between how similar prior incidents must be [] avoided.

*Reitz* at 193. The *Reitz c*ourt adopted the totality of circumstances test to avoid the imprecision of a bright line standard attempting to define when a prior similar act(s) would make a subsequent criminal act foreseeable. The rationale for the totality of circumstances test is self-evident: if all indicators point to a premise being unreasonably dangerous, the responsible parties must take reasonable measures to warn or protect invitees. *See, e.g., Simpson* at 135. *See also Rush v. Lawson Co.*, 65 Ohio App. 3d 817, 820 (3d Dist.1990) ("In other words, did previous experience on the premises create a duty to provide additional protection for business invitees?").

{¶ 17} The trial court's requirement that appellants show foreseeability of a specific harm contradicts with the Supreme Court's authority, which has made it clear that a foreseeability test must not be so narrowly construed that it defeats the public policy. Most recently, in *Cromer v. Children's Hosp. Med. Ctr. of Akron,* 142 Ohio St.3d 257, 2015-Ohio-229, the Supreme Court gave a detailed analysis to explain why foreseeability is a general consideration. The Court stated at ¶ 24:

> The concept of foreseeability is an important part of all negligence claims, because [t]he existence of a duty depends on the foreseeability of the injury. As a society, we expect people to exercise reasonable precautions against the risks that a reasonably prudent person would anticipate. Conversely, we do not expect people to guard against risks that the reasonable person would not foresee. The foreseeability of the risk of harm is not affected by the magnitude, severity, or exact probability of a particular harm, but instead by the question of whether some risk of harm would be foreseeable to the reasonably prudent person. Accordingly, the existence and scope of a

> person's legal duty is determined by the reasonably foreseeable, general risk of harm that is involved.

(Internal citations omitted.) The Tenth District Court of Appeals, along with several others, has recognized this recent pronouncement as the standard in negligence actions. *See Amoako-Okyere v. Church of the Messiah United Methodist Church*, 89 Ohio App.3d 17, 2015-Ohio-3841, ¶ 36 (10th Dist.) ("[g]enerally, the existence of a duty depends upon the foreseeability of injury to someone in the plaintiffs general situation"); *see also Hendrickson v. Grider*, 4th Dist. No. 16CA3537, 2016-Ohio-8474, ¶ 64; *Clark v. Barcus*, 5th Dist. No. CT2017-0019, 2018-Ohio-152, ¶ 20; *Parker v. L. T.*, 1st Dist. No. C-160642, 2017-Ohio-7674, ¶ 18.

{¶ 18} The Supreme Court's analysis in *Cromer*, that foreseeability is based on the general risk of harm that is involved, was consistent with its prior review of the issue when it explicitly disavowed the requirement of specific harm foreseeability in a negligence-duty analysis. *Queen City Terminals v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609 (1995). In *Queen City Terminals, Inc.*, the Supreme Court made clear at 619:

> It is not necessary that the defendant should have anticipated the particular injury; it [is] sufficient that his act was likely to result in injury to some one. * * * [A] particular defendant need not foresee the specific harm caused by its negligence, if the harm would have been foreseeable to a reasonably prudent person.

(Citations omitted.) Accordingly, the trial court applied the incorrect standard and an improper analysis in granting appellees' motion for summary judgment. The trial court required appellants to demonstrate that the exact prior situation had previously occurred and, absent that, relieved the premise owner of any responsibility for reasonable security.

{¶ 19} Our de novo review shows that, construing the facts in appellants favor, the totality of circumstances in this case is "somewhat overwhelming." *Heimberger* at ¶ 18. Appellants introduced significant evidence, if believed, to convince a reasonably prudent person that unless appellees took some precautions, serious violent harm was likely to continue to occur in the shopping center's parking lot. In opposing summary judgment, pursuant to Civ.R. 56(C), appellants produced five affidavits (including two expert affidavits), eleven deposition transcripts, and nine exhibits supported by depositions.

{¶ 20}   Under *Heimberger,* we may consider the entirety of the record to determine whether the circumstances give rise to an owner or manager's duty to reasonably warn or protect invitees from a criminal intent. We begin our analysis by addressing the character of appellees' business and appellees' knowledge of the risk of harm to Consumer Square West's patrons. Appellants have introduced at least some evidence of the following.

{¶ 21}   Consumer Square West is a 356,000 square foot commercial shopping center and parking lot. Appellees do not dispute that they were aware of the violence in their parking lot. Consumer Square West employed no security measures in its parking lot and appellees admit they implemented no security measures or took any action designed to improve the safety of shoppers, from the time they took control of the shopping center in June 2011 through the November 2013 subject incident.

{¶ 22}   Upon purchasing the property, BAI immediately enlisted Zamias—a nation-wide commercial property management firm overseeing roughly 40 properties—to assist in the due diligence stage of the Consumer Square West acquisition. As part of its analysis, Zamias circulated a tenant questionnaire to the tenants of Consumer Square West. Twelve of the sixteen tenants responding to the interview indicated concern about the lack of security or their safety on the property. Many stated explicitly that the shopping center was "unsafe." (*See* July 5, 2017 Aff. of Ken Leonard at ¶ 24-26; May 31, 2017 Dep. of Edward Carr at 48.)

{¶ 23}   Appellees acknowledged the risk as early as 2011, when property manager Carr contacted a surveillance system vendor, Ryan Temple, and admitted he was "concerned about the safety of customers in the shopping center's parking lot." (May 4, 2017 Aff. of Ryan Temple at ¶ 5.) Temple visited Consumer Square West and prepared an estimate for a video surveillance system of $23,295.90. (Aff. of Temple at ¶ 7.) Shortly thereafter, Carr and Zamias advised Temple that they did not desire to proceed with the installation of the video surveillance. (Aff. of Temple at ¶ 8.)

{¶ 24}   In 2012, Carr determined it was important to conduct a security consultation at Consumer Square West. He repeatedly sought approval for the expert consult. Carr e-mailed ownership CEO Amit Barnoon and Zamias CEO Joe Anthony. (Feb. 3, 2012 E-mails.) Carr describes two recent robberies at Consumer Square West: one at Jack's Aquarium and one at Dollar Tree. *Id.* He concludes that he: reached out to a security

company today to discuss our situation and alternatives we discussed a product of his—a "Threat and Vulnerability Study and Site Assessment" and "this may be a valuable first step in identifying productive security measures to head off any increase in criminal events at the center." *Id.* Ownership denied Carr's request.

{¶ 25} Three weeks later, Carr again e-mailed the CEOs of ownership and management, describing two more armed robberies in the vicinity of the shopping center. Carr reiterates that this "may be a good time to bring up the security review I spoke of a couple weeks ago * * * I believe the $1,500 will be money worth spending, and should lead to an 'actionable' action plan for security efforts at the property." (Feb. 24, 2012 E-mail.) Barnoon approved the security study.

{¶ 26} Shortly thereafter, Carr e-mailed Theodore Owens, CEO of Ohio Special Services, emphasizing his need for " 'actionable' action planning based on [Owens'] research and recommendations." (Mar. 1, 2012 E-mail.) Owens completed a Threat and Vulnerability Assessment and Site Survey of Consumer Square West in March 2012. Most strikingly, over one year before the subject incident, appellees were informed and warned by a security expert that its parking lot "created a significant risk that its customers using the parking lot would be victims of violence." (Apr. 7, 2017 Aff. of Owens at ¶ 9-11.) Owens made actionable recommendations to Zamias and Carr. Owens recommended, among other things, that appellee employ "roving armed security." *Id.* Zamias made no changes based on Owens' report and recommendations.

{¶ 27} In addition to Owens, two experts in retail property management and security both stated that the appellees foresaw the threat to customers in their parking lot. Property management expert Ken Leonard stated: "[b]ased on the foregoing evidence of actual knowledge, it is my opinion that Zamias knew of the substantial threat of harm to customers in the parking lot prior to November 15, 2013." (July 5, 2017 Aff. of Leonard at ¶ 37.) Leonard also opines that "the owner and manager knew, or should have known, there was a substantial risk of harm to the Plaintiffs." *Id.* at ¶ 60. An affidavit of commercial property management expert Thomas Lekan concludes that Consumer Square West should have employed a heightened security presence prior to the subject incident because "the threat of harm to shoppers in the parking lot was obvious." (July 6, 2017 Aff. of Lekan at ¶ 15.)

{¶ 28} Consumer Square West's parking lot is in an extremely high-crime area. The shopping center's property manager Carr acknowledged this seven months before the attack on appellants in an internal e-mail strategizing about how to respond to a tenant's request for security. In April 2013, tenant Dots emailed management to state the store's team was "concerned * * * especially in the evening in the parking lot. Can you let me know what security measures are [in] place here?" (Apr. 5, 2013 E-mail.) Carr then sent the e-mail from Dots to other Zamias employees and wrote: "What security? * * * Besides this precinct of Columbus as having the highest crime rate and being blocks away from an extremely dis-reputable neighborhood, I'm not sure what we want to say. Let's talk on Monday to see what story we want to tell." *Id.* Management expert Leonard finds Carr's actions "troubling" in that his email indicates a priority on "strategizing about how to 'spin' the lack of security or undermine his tenant's legitimate concerns" rather than addressing the security issue. (Aff. of Leonard at ¶ 28.)

{¶ 29} Our review shows that this is not a case where appellees did not foresee danger at their shopping center. The evidence shows that appellees were aware of the threat of harm in the parking lot, understood the threat, and completely ignored the warnings of the security experts they commissioned. Additionally, on multiple occasions, tenants e-mailed management to question what was being done about the lack of security.

{¶ 30} Next, we will consider the propensity for criminal activity to occur on or near the location of the business. In addition to Carr describing the area of Columbus as "having the highest crime rate and being blocks away from an extremely dis-reputable neighborhood," Columbus Police Department ("CPD") liaison for this precinct, Officer Brian Newsome, testified Consumer Square West is dangerous and in a high crime area. (Apr. 6, 2017 Dep. of Officer Newsome at 53-54.) Officer Newsome testified that between January 1, 2010 and November 15, 2013, the CPD made 1,359 dispatched runs to Consumer Square West, which is almost one run per day. *Id.* at 32.

{¶ 31} Aside from the historical crime information contained in the CPD's public records, an industry standard crime forecasting service assessed a significant threat at the shopping center. Cap Index, which produces the Crime Cast reports, describes itself as having launched the industry of business crime risk forecasting and that the service is utilized by 80 percent of the Fortune 100 and 20 of the top 25 retailers. Consumer Square

West anchor tenant Kroger utilizes the reports at all of its 2,900 stores, relying on the information and trusting its accuracy. (June 21, 2017 Dep. of Kevin Larson at 10-18.) The 2013 Crime Cast report for Consumer Square West assigns a score for crimes against persons as 6.24, meaning that the likelihood of crimes against persons at Columbus Square West is 6.24 times the national average. (Crime Cast report regarding Consumer Square West at 4.)

{¶ 32} We next review the record for evidence of prior similar incidents and the degree in form between previous crimes and the crime at issue.  As such, based on our above analysis, we are reviewing the record for evidence of the general harm involved here, i.e., violence. Officer Newsome testified that in the 3 years before this incident, the shopping center had 4 previous similar crimes where someone had attempted to run over a shopper in the parking lot. (Dep. of Newsome at 45-49.) These potential vehicular assaults were in addition to 19 other assaults in the parking lot and 4 armed robberies in 2012 alone. *Id.* at 41-42. In August 2011, a Kroger employee was stabbed in the neck in the parking lot outside the store. *Id.* at 49; (Depo. of Larson at 30.)

{¶ 33}  In addition, in 2013 the Crime Cast report for Consumer Square West showed that the likelihood of aggravated assault was 6.78, i.e., almost 7 times the national average. (Crime Cast report at 4.)  As such, the evidence shows, if believed, that there was significant violent crime, and a threat of continued violent crime, at the shopping center prior to this incident.

{¶ 34} Our review shows that the amount of evidence provided by the appellants surpasses the evidence provided in other cases analyzed under Ohio's totality of circumstances test. Based on the above, we find that appellants have put forth evidence, if believed, that would satisfy the "somewhat overwhelming" standard. The clearest indicator that a harm is foreseeable is a premises owner's actual knowledge of the threat. Summary judgment for a defendant is improper when a plaintiff introduces evidence suggesting that owner had actual knowledge of the threat. *See, e.g., Snow v. Fraternal Order of Eagles, Post No. 336*, 5th Dist. No. 93-CA-22 (Nov. 18, 1993).

{¶ 35} Evidence was introduced to show that the Consumer Square West parking lot saw almost daily police dispatches. At this stage, the evidence must be construed in appellants' favor. Considering the totality of the circumstances—including evidence of

appellees' actual knowledge of the danger and prior similar occurrences—appellants' have created a genuine issue of material fact as to whether appellees were on notice that harm was foreseeable, and that appellees knew, or should have known, that there was a substantial risk of harm to its patrons. Based on the record and the controlling authority on these issues, we reverse the trial court's grant of summary judgment and remand this matter for further proceedings consistent with this decision.

## IV. DISPOSITION

{¶ 36} Appellants' sole assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded for further proceedings consistent with this decision.

*Judgment reversed; case remanded.*

TYACK, J., concurs.
KLATT, P.J., dissents.

KLATT, J., dissenting.

{¶ 37} Because I would affirm the trial court's judgment, I respectfully dissent.

{¶ 38} The central issue in this case is whether the appellees, as the owners/managers of a large shopping center, should have foreseen that a third-party would commit vehicular homicide and seriously injure another shopper by purposefully running them down with a car in the parking lot of a Kroger store. Under the test set forth by this court in *Heimberger v. Zeal Hotel Group, Ltd.*, 10th Dist. No. 15AP-99, 2015-Ohio-3845, I would conclude that such a crime is not foreseeable, and therefore, appellees owed no duty to protect appellants from this type of criminal attack.

{¶ 39} " 'The foreseeability of criminal acts, examined under the test of whether a reasonably prudent person would have anticipated an injury was likely to occur, will depend upon the totality of the circumstances.' " *Heimberger* at ¶ 18, quoting *Shivers v. Univ. of Cincinnati*, 10th Dist. No. 06AP-209, 2006-Ohio-5518, ¶ 7. Contrary to the assertion of the majority, in the context of criminal acts committed by third-parties, it must be demonstrated that the specific harm was foreseeable. *Heimberger* at ¶ 25. Nor was the court's emphasis on the "specific harm" dicta. Rather, the requirement that the specific harm must be foreseeable was central to the holding in *Heimberger*, even though the foreseeability of the specific harm must be considered in the context of the totality of

circumstances. This holding does not conflict with Supreme Court of Ohio precedent. Moreover, because criminal acts are largely unpredictable, the totality of the circumstances must be "somewhat overwhelming" to establish that the specific harm was foreseeable. *Heimberger* at ¶ 18. Those circumstances are simply not present in this case.

{¶ 40} Although the majority takes great pains to discuss in detail the evidence that showed there was a lot of general crime in this neighborhood and some in this large parking lot, such evidence is not enough to create a duty to warn or protect. *Boyd v. Lourexis, Inc.*, 8th Dist. No. 98028, 2012-Ohio-4595, ¶ 21 (high crime area not enough for defendants to have foreseen the violent, unprovoked brutal attack). The majority does briefly mention four police reports that involved incidents involving pedestrians and automobiles in the parking lot. However, even a cursory examination of this evidence reveals that it falls far short of the "somewhat overwhelming" standard necessary to establish foreseeability and the creation of a duty. First, the four police department "run reports" are not proper summary judgment evidence. They are not authenticated and do not indicate whether the substance of the report was even accurate. Second, there is no indication that appellees were aware of these specific reports. Third, the reports either involved incidents that did not take place in the parking lot or did not clearly involve intentional/criminal conduct. None of the run reports indicated that injuries arose from the reported conduct.

{¶ 41} Given the absence of any evidence of prior criminal conduct of this nature in the parking lot or appellees' knowledge of such conduct, no reasonable jury could conclude that such a risk of harm was foreseeable. Therefore, I would affirm the trial court's grant of summary judgment for appellees. Because the majority reaches a different conclusion, I respectfully dissent.

_____