[Cite as *Davis v. Hollins*, 2019-Ohio-1789.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Diana Davis, as Administrator of the Estate of Jason Barry et al., | : | |
| | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 17AP-716 |
| v. | | (C.P.C. No. 15CV-10049) |
| | : | |
| Montez D. Hollins et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

## D E C I S I O N

### Rendered on May 9, 2019

*Piscitelli Law Firm,* and *Eric W. Henry,* for appellants.

*Molly G. Vance,* for appellees.

## ON APPLICATION FOR RECONSIDERATION

NELSON, J.

{¶ 1} Appellees the owner and its managing member and their property manager of Consumer Square West Shopping Center (BAI Consumer Square West, LLC; BAI Consumer Square West Mezz, LLC; and Zamias Services, Inc.; together, "BAI/Zamias" or "appellees") seek reconsideration of this court's decision reversing the summary judgment that the trial court had granted in their favor. Because certain passages in paragraphs 15 through 18 of the panel's original decision may tend to muddy the initial requirement that to establish liability by a business owner for failure to warn or protect its business invitees against criminal acts by third parties, " 'one must demonstrate that the specific harm at issue was foreseeable,' " *Heimberger v. Zeal Hotel Group, Ltd.*, 10th Dist. No. 15AP-99, 2015-Ohio-3845, ¶ 25, quoting *Maier v. Serv-All Maintenance, Inc.*, 124 Ohio App.3d 215, 224 (8th Dist.1997), "clarification is appropriate, [and] we grant the application for

reconsideration and clarify our prior opinion," *In re T.B.*, 10th Dist. No. 06AP-769, 2006-Ohio-5300. But because the record here indeed would permit reasonable minds to conclude that the "totality of the circumstances" were "somewhat overwhelming" in demonstrating that BAI/Zamias knew or should have known of a substantial risk of violent, criminal physical harm to persons in the shopping center parking lot; because that assessment would meet the necessary level of specificity (in considering the threat of physical violence, as opposed, say, to petty offenses or crimes against property); and because such a conclusion could be reached even without consideration of the "police run" reports included in the initial panel litany of evidence that "if believed * * * would satisfy the 'somewhat overwhelming' standard," we reach the same conclusion as our initial panel decision and reverse the trial court's grant of summary judgment as predicated on the foreseeability issue.

{¶ 2} That is, when the record is examined in the light most favorable to the nonmoving party on summary judgment, this is not a case where "a reasonable fact-finder could only conclude that the incident was not foreseeable." *Compare Wheeler v. Ohio State Univ.*, 10th Dist. No. 11AP-289, 2011-Ohio-6295, ¶ 19 (adding that "[t]here was no evidence to support an inference that OSU had any knowledge that a threat existed, and OSU had no way to foresee the events"). Here, in this case involving a parking lot altercation that escalated into a driver running down two people, killing one and injuring the other, there is competent evidence by which one could reasonably find that BAI/Zamias should have, and did, know of a significant risk that shopping center customers would become victims of violence in the parking lot. *Compare, e.g., Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 173 (1989) (directed verdict improper because, construing the evidence most strongly in favor of the nonmoving party, "reasonable minds could have concluded that Ruhlin had a duty toward Federal to take adequate measures to protect against vandalism"); *Allison v. McDonald's Restaurants*, 8th Dist. No. 63170, 1993 Ohio App. LEXIS 5264, *4 (Nov. 4, 1993) (reversing summary judgment against business because viewing the evidence "most strongly in appellant's favor, we conclude that reasonable minds could find the attack on [the business invitee] was foreseeable").

{¶ 3} Among other things, a fact finder could conclude that BAI/Zamias were told by a security consultant whom they themselves had retained (but on whose report they did

not act) that parking lot violence was a real threat the year before the horrific events of 2013. Theodore Owens recites in his affidavit that in 2012: "I advised Mr. Carr [of Zamias Services] that the condition of the Consumer Square West parking lot created a significant risk that its customers using the parking lot would be victims of violence." (July 10, 2017 Pls.' Memo Contra Defs.' Mot. for Summ. Jgmt., Ex. 1, Owens Aff. at ¶ 10.)

{¶ 4}    A fact finder on this record also could conclude that BAI/Zamias already had expressed their own understanding of these sorts of concerns. Ryan Temple (a video surveillance provider whose services BAI/Zamias apparently did not purchase) avers in his affidavit that Mr. Carr of Zamias Services "was concerned about the dangerous area in which the Consumer Square West Shopping Center was located and concerned about the safety of customers in the shopping center's parking lot." (Pls.' Memo Contra Defs.' Mot. for Summ. Jgmt., Ex. 2, Temple Aff. at ¶ 5.)

{¶ 5}    BAI/Zamias are frank to "acknowledge" that "the admissible evidence speaks to" the "reputation" of "the area in and around the shopping center at Consumer Square West" as "a high crime area." (Appellees' Brief at 24-25.) They then further concede as beyond peradventure that "occasional *physical altercations* not amounting to homicide" were a "*repeating theme* in the Consumer West Shopping Center." *Id.* at 25 (emphasis added); *see also, e.g.*, *id.* at 15, fn. 3 (footnoting as "admissible evidence" testimony of "miscellaneous altercations in the subject parking lot"). To the same effect, BAI/Zamias advised the trial court that: "it is *undisputed* that altercations have occurred in the parking lot at Consumer Square West. The events identified by Plaintiffs are endemic of crime in the area." (July 21, 2017 Defs.' Reply in Support of Pls.' Mot. for Summ. Jgmt. at 4; emphasis added.)

{¶ 6}    And against the additional evidentiary backdrop suggesting—when read in the light most favorable to the nonmoving Plaintiffs—that the area in which the shopping center is located is known to be dangerous, *see, e.g.,* Dep. of Officer Brian Newsome at 15 (precinct is considered "among the most dangerous in the city"); Jul. 10, 2017 Pls.' Memo Contra Defs.' Mot. for Summ. Jgmt., Ex. 5, Leonard Aff. at ¶ 46, 47 (citing 2013 Crime Cast report indicating that the likelihood of crimes against persons at the shopping center and of aggravated assault there exceeds six times the national average), BAI/Zamias stated to the trial court that the shopping center *parking lot itself* was "no * * * less dangerous" than

the surrounding area. (Aug. 6, 2017 Defs.' Opp. to Pls.' Mot. for Leave to File Sur-Reply at 4: "The parking lot at Consumer Square West was no more or less dangerous than any of the immediately surrounding areas.") BAI/Zamias has reiterated to this court that the shopping center parking lot was every bit as dangerous as its surroundings in what they concede was a "high crime" locale: "It is clear that it is no more or less likely that a crime would occur in the Consumer West parking lot than would occur in the immediately surrounding area, and Plaintiffs-Appellants fail to demonstrate otherwise." (Appellees' Brief at 13.)

{¶ 7} The Supreme Court of Ohio has instructed that "a business owner has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner." *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 135 (1995); *see also, e.g., Federal Steel*, 45 Ohio St.3d at 173, 178 ("reasonable minds could have determined that Ruhlin had a duty toward Federal to take measures to protect against vandalism"; "reasonable minds could have concluded that Ruhlin had a special duty in this case to maintain the protective measures undertaken"). That principle is binding on us as an intermediate court, and our precedents consistently have outlined the required analysis. *See, e.g., Heimberger*, 2015-Ohio-3845; *Desir v. Mallett*, 10th Dist. No. 14AP-766, 2015-Ohio-2124; *Wheeler*, 2011-Ohio-6295; *Shivers v. Univ. of Cincinnati*, 10th Dist. No. 06AP-209, 2006-Ohio-5518.

{¶ 8} As our initial panel decision here recited, "[i]f a third party's criminal act is not foreseeable, then no duty arises, and a business owner cannot be held liable in negligence." *Heimberger* at ¶ 17, citing *Shivers* at ¶ 6. "Foreseeability of harm usually depends on a defendant's knowledge," *Wheeler* at ¶ 16, and, " 'examined under the test of whether a reasonably prudent person would have anticipated an injury was likely to occur, will depend upon the totality of the circumstances,' " *Heimberger* at ¶ 18, quoting *Shivers* at ¶ 7. " 'The totality of the circumstances test considers prior similar incidents, the propensity for criminal activity to occur on or near the location of the business, and the character of the business.' " *Id.* " 'Three main factors contribute to a court's finding the evidence insufficient to demonstrate the foreseeability of a crime as a matter of law: (1) spatial separation between previous crimes and the crime at issue; (2) difference in degree

and form between previous crimes and the crime at issue; and (3) lack of evidence revealing defendant's actual knowledge of violence.' " *Id.,* quoting *Shivers* at ¶ 9. " 'Because criminal acts are largely unpredictable, the totality of the circumstances must be "somewhat overwhelming" in order to create a duty.' " *Id.,* quoting *Shivers* at ¶ 7, quoting *Reitz v. May Co. Dept. Stores,* 66 Ohio App.3d 188, 194 (8th Dist.); *Desir* at ¶ 25 (same citations); *Wheeler* at ¶ 17 (same citations).

{¶ 9}   "[A] business owner is not an absolute insurer of his invitees' safety," and the owner's special duty to warn or protect therefore arises only when the owner knows or should know of the substantial risk of harm to invitees from criminal conduct. *Sullivan v. Heritage Lounge,* 10th Dist. No. 04AP-1261, 2005-Ohio-4675, ¶ 24, citing *Howard v. Rogers,* 19 Ohio St.2d 42, 46-47 (1969); *Simpson,* 73 Ohio St.3d 130, at the syllabus. Thus, as we have emphasized from *Wheeler* on, " '[t]he foreseeability of criminal acts depends upon the knowledge of the business owner.' " *See, e.g., Desir* at ¶ 25, quoting *Sullivan* at ¶ 24.

{¶ 10} And the "totality of the circumstances" gauged to elucidate the existence of such knowledge means just that—"the 'totality of the circumstances, including the occurrence of previous similar crimes and the specifics of the incident itself.' " *Id.* at ¶ 25, 13 (finding that attack could not be found foreseeable where "the evidence demonstrated that no crime had ever occurred" at the business location and could not reasonably have been anticipated). *Heimberger* is to the same effect: " 'To show foreseeability, one must demonstrate that the specific harm at issue was foreseeable.' " 2015-Ohio-3845 at ¶ 25, quoting *Maier,* 124 Ohio App.3d at 224.

{¶ 11} But how "specific" is specific enough? BAI/Zamias hinge their motion for reconsideration on the fact that "there is no evidence that can point to a single prior incident where a vehicular homicide occurred at Consumer Square West making the subject incident foreseeable and thereby creating a duty on Appellees." (Mot. for Recons. at 7; *see also id.* at 8: "no previous vehicular homicides or attempted vehicular homicides.") That argument overreads *Heimberger.*

{¶ 12} *Heimberger* involved the theft of a handbag from a hotel lobby. 2015-Ohio-3845 at ¶ 2. Contrary to the analysis that BAI/Zamias urge here, we did not confine our

assessment in *Heimberger* to stolen purses alone. Rather, we explicitly defined "the specific harm here–theft of a personal item from the lobby." *Id.* at ¶ 25.

{¶ 13} *Heimberger's* analysis, that is, extended to whether under the totality of the circumstances there was a known substantial threat of theft crimes involving any guest personal property, of any value or description, taken from the relevant area, the lobby. Where there had been "no prior lobby thefts" and "[t]he only incident located in the lobby occurred seven months prior to the handbag theft, and involved escorting an unruly person out of the lobby," there was no "genuine issue of material fact." *Id.* at ¶ 22, 25, 26. Comparable analysis here must look to whether under the totality of the circumstances there was a known substantial threat of crimes of violence against persons in the shopping center parking lot. *But see Snow v. Fraternal Order of Eagles, Post No. 336*, 5th Dist. No. 93-CA-22, 1993 Ohio App. Lexis 5762, * 3, 6 (Nov. 18, 1993) (genuine issue of material fact exists as to whether knowledge of vandalism and theft incidents in parking lot was sufficient to make assault foreseeable; summary judgment reversed).

{¶ 14} *Heimberger's* citation to *Maier* further embellishes the point. *Maier* held that "a series of thefts of portable computers" from an office building did not make a murder there foreseeable where "[n]o assaults had taken place in the building." 124 Ohio App.3d at 218-19. The court juxtaposed these "nonviolent crimes" with "assaults": "The totality of the circumstances [was] not 'somewhat overwhelming.' No assaults had ever taken place in the building, and the building was not located in a high crime area." *Id.* at 222. Again, foreseeability did not depend on foreknowledge of threatened crimes fitting the precise description of the crime that materialized, but the analysis instead looked to knowledge regarding the likelihood of crimes involving violence to or assaults on persons. *See also, e.g., Shivers*, 2006-Ohio-5518 at ¶ 10 ("specific" warning required was not of rape in particular, but rather of "the likelihood that a violent crime would occur in Daniels Hall"); *King v. Lindsay*, 87 Ohio App.3d 383, 387 (10th Dist.1993) (arising under statute governing establishments serving alcohol; "[a]lthough appellee may not have known specifically of [the particular defendant's] violent propensity, it was aware that acts of physical violence were likely to occur"); *Allison*, 1993 Ohio App. Lexis at 2 (two past robberies, expert testimony that criminal acts should have been anticipated given type, design, and location of business, and company policy against employees being behind building alone at night

because of concerns for their safety, would allow reasonable minds to find abduction and rape foreseeable; summary judgment for business reversed).

{¶ 15} That makes particular sense because other showings that plaintiffs in such cases must make—showings that the trial court in this case has not yet addressed and that are not now before us—are that in addition to the foreseeability-dependent duty, there has been a breach of that duty and "an injury proximately resulting therefrom." *See, e.g., Federal Steel*, 45 Ohio St.3d at 173. As in *Doe v. System Parking*, 79 Ohio App.3d 278, 279-80 (8th Dist.1992), where the court found that "a material issue of fact exists regarding the foreseeability of the abduction, and subsequent rape and robbery * * * in defendant-appellee's attended parking facility" on the basis of the attendant's safety concerns, the anticipated potential for customer attacks, and the lot's location in a "high-crime area [that had known] incidents of violent crimes," we understand that subsequent questions of whether there was a breach of duty "and whether such breach is the direct and proximate cause of appellant's injuries, as well as various defenses to a negligence action, are better left for another day."

{¶ 16} What ultimately may be required of a business owner will depend on a fit between knowledge of the specific harm, steps needed to address that kind of harm, and the sorts of injury that proximately result from a breach of that duty. If the known substantial danger is of pick-pocketing, for example, specific measures that might be necessary to warn or guard against violent assault will not be required. (Thus, our panel's original statement that "if all indicators point to a premise being unreasonably dangerous, the responsible parties must take reasonable measures to warn or protect invitees" prompts the question: against what? And the answer must be, against the *sort* of danger that has been identified and is known: that opinion thus implicitly incorporates its own specificity requirement, albeit at a higher level of generality [or lower level of specificity] than that on which the panel might have reckoned.)

{¶ 17} So *Heimberger* retains its full vitality and is consistent with the result we reach here. The initial panel decision in this matter, perhaps somewhat tangled in inchoate distinctions between "a 'specific acts and harm' requirement, as opposed to similar incidents and general harm," found that the "requirement that a 'specific harm' be foreseen is limited, in premises liability context, to *Maier* and *Heimberger*." *Davis v. Hollins*, 10th

Dist. No. 17AP-716, 2019-Ohio-385, ¶ 15. We now conclude that, properly understood and as explicated above, those cases are not so limited; like the Supreme Court precedent invoked by our first panel decision, they support or fit comfortably with our reversal of summary judgment.

{¶ 18} The trial court did not elaborate much on this score. Rather, it stated simply that "[w]hile Plaintiffs have submitted a plethora of evidence of the *general* crime present in the area, there is nothing in the record that would indicate that Defendants knew or should have known that the specific acts and harm perpetrated in this case were likely to occur." (Sept. 11, 2017 Decision & Entry at 6.) That finding does not account for the evidence that BAI/Zamias were on notice from their own security consultant "that the condition of the Consumer Square West parking lot created a significant risk that its customers using the parking lot would be victims of violence." (Owens Aff. at ¶ 10.) It does not account for evidence that they themselves said they were "concerned about the safety of customers in the shopping center's parking lot." (Temple Aff. at ¶ 5.) It does not account for their acknowledgement of "undisputed" fact "that altercations have occurred in the parking lot at Consumer Square West * * * endemic [sic] of crime in the area." (July 21, 2017 Defs.' Reply in Support of Pls.' Mot. for Summ. Jgmt. at 4.) And, even beyond the expert witness testimony of Thomas Lekan, for example, that "any experienced security consultant would conclude that security measures were needed in the parking lot at Consumer Square West" and that BAI/Zamias failed to follow industry standards of care (Jul. 10, 2017 Pls.' Memo Contra to Defs.' Mot. for Summ. Jgmt., Ex. 6., Lekan Aff. at ¶ 8, 16), it does not account for evidence such as various surveys of store owners advising BAI/Zamias that they felt "unsafe," or perceived "[n]o security. Not always feeling safe." (Jul. 10, 2017 Pls.' Memo Contra to Defs.' Mot. for Summ. Jgmt., Ex. 3A, Snyder Aff. attachments.)

{¶ 19} BAI/Zamias urge, correctly, that being located in a "high crime area" is not in and of itself sufficient to establish foreseeability, (*see* Mot. for Recon. at 11, 12) but they are wrong to any extent they suggest that the admissible evidence here relates only to the general surroundings or general knowledge. The record reflects evidence going to knowledge of the likelihood of violent crime in the specific venue at issue, the parking lot itself. As noted above and as the earlier panel decision also observed, "Appellees do not

dispute that they were aware of the violence in their parking lot." *Davis* at ¶ 21. This sort of knowledge is not the same thing as simple awareness of high crime rates in the area generally. Warnings they received and concerns they expressed related to the parking lot in particular, and could be found to go well beyond general knowledge of generalized threats. To re-cite but one of the examples, security consultant Owens avers that in 2012, he "advised Mr. Carr that the condition of the Consumer Square West parking lot created a significant risk that its customers using the parking lot would be victims of violence." (Owens Aff. at ¶ 10). Moreover, for good or ill, longstanding precedent as invoked by BAI/Zamias themselves and incorporated by this court in *Heimberger*, *Shivers*, and other decisions does explicitly include the prevalence of crime in an area as one consideration encompassed by the totality of the circumstances test. We cannot lightly disregard those established precedents even should we share a policy unease about the possibility of deterring economic growth and jobs that might help overcome a neighborhood's reputation for crime.

{¶ 20} Finally, the record evidence goes well beyond the disputed police run and incident reports, which may not have been properly authenticated and which could constitute hearsay as advanced with regard to the truth of the particular matters reported. *See, e.g.,* Newsome Depo. at 24 ("These [dispatch run reports], I'm guessing, come from the logs from our computers * * * I have at times pulled up * * * a summary for an address"), 26 ("I'm guessing the row itself means the * * * number of dispatch runs"), 34 ("That [incident report] looks like * * * what * * * the call taker would have been dispatching"), 35 ("I don't know if we can pull this up on the computer the way it looks, so my guess, it was dispatch"). Again, the admissible evidence referenced earlier does go directly to the knowledge of BAI/Zamias.

{¶ 21} The original panel decision determined that "Appellants introduced significant evidence, if believed, to convince a reasonably prudent person that unless appellees took some precautions, serious violent harm was likely" to occur in the parking lot and that such foreseeability would give rise (as a matter of law) to a duty to warn or protect business invitees. *Davis,* 2019-Ohio-385 at ¶ 19. We adhere to that conclusion, with the attendant reversal of the trial court's grant of summary judgment.

**CONCLUSION AND DISPOSITION**

{¶ 22} Appellees' motion for reconsideration is granted to permit necessary clarification of the initial panel opinion. The court specifically notes that its 2015 *Heimberger* opinion retains its full vitality and is not limited to its facts. Appellants' sole assignment of error is sustained. The summary judgment of the Franklin County Court of Common Pleas and the resulting dismissal with prejudice of plaintiffs' complaint are reversed, and this cause is remanded for further proceedings consistent with this decision.

{¶ 23} The court notes that its decision here is limited exclusively to the question of whether summary judgment for appellees BAI/Zamias was appropriate on this record as based on the issue of foreseeability. This decision does not address questions that belong in the first instance with the trial court, including those briefly adverted to in the briefing here involving claims for punitive damages and any application of R.C. 2125.01.

*Reconsideration granted;*
*judgment reversed; case remanded.*

BEATTY BLUNT, J., concurs.
KLATT, P.J., concurring in part and dissenting in part.

KLATT, P.J., concurring in part and dissenting in part.

{¶ 24} Although I agree with the majority decision to grant reconsideration, I would affirm the trial court's judgment. Therefore, I respectfully dissent in part.

{¶ 25} The central issue in this case is whether the appellees, as the owners/managers of a large shopping center, should have foreseen that a third party would commit vehicular homicide and seriously injure another shopper by purposefully running them down with a car in the parking lot of a Kroger store. I would conclude that such a crime is not foreseeable, and therefore, appellees owed no duty to protect appellants from this type of criminal attack.

{¶ 26} " '[T]o recover on a negligence claim, a plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury.' " *Desir v. Mallett*, 10th Dist. No. 14AP-766, 2015-Ohio-2124, ¶ 19, quoting *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565 (1998). "When the alleged negligence occurs in the premises-liability

context, the applicable duty is determined by the relationship between the landowner and the plaintiff." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, ¶ 10.

{¶ 27} Generally, a premises owner owes a business invitee a duty to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition. *Desir* at ¶ 23. However, a business owner is not an insurer of its business invitees' safety. *Lang* at ¶ 11. In the context of criminal acts, a business owner only "has a duty to warn or protect its business invitees from criminal acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner." *Simpson v. Big Bear Stores, Co.*, 73 Ohio St.3d 130, 135 (1995). Such a duty arises when the criminal act is foreseeable. If a third party's criminal act is not foreseeable, then no duty arises, and the business owner cannot be held liable in negligence. *Shivers v. Univ. of Cincinnati*, 10th Dist. No. 06AP-209, 2006-Ohio-5518, ¶ 6.

{¶ 28} "The foreseeability of criminal acts, examined under the test of whether a reasonably prudent person would have anticipated an injury was likely to occur, will depend upon the totality of the circumstances." *Id.* at ¶ 7. "The totality of the circumstances test considers prior similar incidents, the propensity for criminal activity to occur on or near the location of the business, and the character of the business." *Id.* "Three main factors contribute to a court's finding the evidence insufficient to demonstrate the foreseeability of a crime as a matter of law: (1) spatial separation between previous crimes and the crime at issue; (2) difference in degree and form between previous crimes and the crime at issue; and (3) lack of evidence revealing defendant's actual knowledge of violence." *Id.* at ¶ 9. "Because criminal acts are largely unpredictable, the totality of the circumstances must be 'somewhat overwhelming' in order to create a duty." *Id.* at ¶ 7, quoting *Reitz v. May Co. Dept. Stores*, 66 Ohio App.3d 188, 194 (8th Dist.1990); *Heimberger v. Zeal Hotel Group, Ltd.*, 10th Dist. No. 15AP-99, 2015-Ohio-3845, ¶ 18.

{¶ 29} Determining what risks are reasonably foreseeable and what risks are not for purposes of deciding whether a duty is owed in a negligence action is a question of law for the court to determine. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989); *Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 2002-Ohio-4210, ¶ 22. *Wheatley v. Marietta College*, 4th Dist. No. 14CA18, 2016-Ohio-949, ¶ 84 (in the context of determining the existence of a

duty, foreseeability is a question of law for the court to decide). Moreover, a question of law does not become a question of fact simply because a court must consider facts or evidence. *Wheatley* at ¶ 55, citing *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 68 (1982), and *O'Day v. Webb*, 29 Ohio St.2d 215 (1972), paragraph two of the syllabus. *But see Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 178 (1989) (determining whether a special duty is owed is an issue that should have been submitted to the trier of fact). We review a determination of duty on summary judgment de novo. *Heimberger* at ¶ 11.

{¶ 30} In the case at bar, I would conclude that the evidence presented by appellants in opposition to appellees' motion for summary judgment is insufficient as a matter of law to establish that appellees should have foreseen a third party would use a vehicle to purposefully run down two innocent victims in the parking lot of this large shopping center. The evidence does demonstrate that the appellees were aware of the general threat of criminal activity involving "physical altercations" in the shopping center's parking lot based upon (1) the shopping center's location in a high crime neighborhood; (2) appellees' security consultant's assessment; and (3) statics showing a higher incidence of violent crime consistent with the surrounding neighborhood. Nevertheless, interpreting these undisputed facts in favor of the appellants, I do not find this evidence sufficiently "overwhelming" to impose a duty on appellees to protect business invitees from the type of criminal conduct at issue here.

{¶ 31} There is a significant difference in degree and form between the previous crimes reported at the shopping center and the heinous crime at issue here. There is no evidence that any of the previous crimes involved homicide or the use of an automobile as a weapon. A significant difference in degree and form between the previous crimes reported and the crime at issue is one of the significant factors this court has considered in determining that a particular criminal act was not foreseeable, and therefore, no duty was owed. *Shivers*, 10th Dist. No. 06AP-209, 2006-Ohio-5518, ¶ 9; *Wheatley* at ¶ 67 (listing Ohio appellate decisions finding no duty when past violent crimes are different in form, i.e., dissimilar to the violent crime that caused the plaintiff's injury). In addition, the parking lot of the shopping center is large and serves many retail establishments. There is no evidence showing that there was a spatial relationship between previous crimes and the crime at issue other than the fact that some of the reported crimes occurred somewhere in

the parking lot.  This is also a factor that mitigates against finding that the risk of vehicular homicide and/or vehicular assault was foreseeable.  *Shivers* at ¶ 9.  Lastly, there was no evidence that appellees were aware that the risk of harm to its business invitees was any greater than the risk posed in the immediate area surrounding the shopping center.  *Boyd v. Lourexis, Inc.*, 8th Dist. No. 98028, 2012-Ohio-4595, ¶ 21 (high crime area not enough for defendants to have foreseen the violent unprovoked brutal attack).  In fact, the evidence presented indicates that the general risk of violent crime in the parking lot was similar to the risk presented in the surrounding neighborhood.  As noted in *Wheatley*, the basis of liability in a premises-liability context is the owner's superior knowledge of existing dangers or perils to persons going on the property.  "It is only when there are perils or dangers known to the owner and not known to the person injured that liability may be established and recovery permitted."  *Id.* at ¶ 57.  Moreover, evidence of past physical altercations in the parking lot does not distinguish between victims who were business invitees and those who were on the premises for other purposes.

{¶ 32} The Supreme Court of Ohio has stated:

> "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Commerce & Industry Ins. Co.*, 45 Ohio St.3d at 98, 543 N.E.2d 1188; see, also, *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505. This court has often stated that the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271; *Commerce & Industry*, 45 Ohio St.3d at 98, 543 N.E.2d 1188; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. In addition, we have also stated that the duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 565, 697 N.E.2d 198; *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph one of the syllabus. Admittedly, however, the concept of duty in negligence law is at times an elusive one. As this court explained in *Mussivand* [*v. David*, 45 Ohio St.3d 314 (1989):

> "There is no formula for ascertaining whether a duty exists. Duty '* * * is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (Prosser, Law of Torts (4th ed.1971) pp. 325-326.) Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. (Prosser, *Palsgraf* Revisited (1953), 52 Mich.L.Rev. 1, 15).' " *Id.*, 45 Ohio St.3d at 318, 544 N.E.2d 265, quoting *Weirum v. RKO Gen., Inc.* (1975), 15 Cal.3d 40, 46, 123 Cal.Rptr. 468, 539 P.2d 36. See, generally, *Palsgraf v. Long Island RR. Co.* (1928), 248 N.Y. 339, 162 N.E. 99.

*Wallace*, 96 Ohio St.3d 266, 2002-Ohio-4210, ¶ 23-24.

{¶ 33} When a retail establishment is located in a high crime area and there is a history of criminal activity involving business invitees on the premises, further criminal activity against business invitees consistent with that history is foreseeable, and therefore, may give rise to some duty to warn or protect business invitees from such activity. Nevertheless, not *all* forms of violent criminal activity automatically become foreseeable. Otherwise, a business owner essentially would become the insurer of a business invitees' safety, an obligation the law does not impose. Moreover, such liability exposure would create a further disincentive for businesses to locate in high crime neighborhoods.

{¶ 34} Given the absence of any evidence of prior criminal conduct of the nature at issue here, I would conclude as a matter of law that such conduct was not foreseeable. Therefore, I would affirm the trial court's grant of summary judgment for appellees. Because the majority reaches a different conclusion, I respectfully dissent to that aspect of the majority decision.

———————————